MR. JUSTICE MORRISON
delivered the opinion of the Court.
*448 Plaintiff William Owens (Owens) appeals the order of the District Court, Richland County, granting partial summary judgment on the issue of punitive damages in an action alleging discriminatory firing of Owens by defendant Parker Drilling Company (Parker).
Owens is missing his right arm from three inches below the elbow. He lost that part of his arm when he was six years old. Owens has worked as a “roughneck” and drill “hand” since 1958 or 1959.
Owens worked for Parker from April 4,1978 through April 8, 1978. He was discharged from Parker by Roger Hystad at the direction of his supervisors for the given reason that he only had one arm. No investigation was made to determine the ability of Owens to safely and satisfactorily complete all duties of his employment. The decision to fire was apparently made on the basis that a one-armed worker is unsafe per se on a drilling operation.
Parker has a safety manual setting forth minimum physical requirements for employees prohibiting employment of persons with “severe disabilities or impairments to arms, hands, fingers, legs, feet and toes.”
Owens was out of work for approximately three days, and then was hired on by another drilling company. There is considerable evidence that Owens has at all times been an able and safe worker on the drilling rigs both before and after his employment with Parker.
Owens brought this action seeking compensatory damages for unlawful discharge in violation-of Sections 49-4-101 and 102, MCA. He also seeks punitive damages for “wrongful, willful, intentional, malicious, and reckless act of Defendant in firing Plaintiff.”
Parker moved for partial summary judgment on the issue of punitive damages. The District Court granted the motion, ruling that plaintiff had failed to establish a genuine factual issue as to whether the violation of statute was criminal or wanton, or whether the acts of defendant were done with sufficiently culpable mental state to justify award *449 of punitive damages under Section 27-1-221, MCA.
The following issues are raised on appeal:
1. Is plaintiff entitled to a trial on the question of punitive damages where he has established a genuine factual issue of whether his discharge constituted unlawful discrimination as defined in Sections 49-4-101, 102, MCA?
2. Has plaintiff produced sufficient evidence to establish a genuine factual issue of whether defendant acted with “oppression, fraud or malice, actual or presumed,” entitling him to a recovery of punitive damages?
Owens argues that breach of the statutory duty imposed by Sections 49-4-101, 102, MCA is so culpable, that such a breach necessarily raises a genuine issue of punitive damages. We disagree.
The mere fact that the conduct on which the lawsuit is based is unlawful should not in and of itself authorize a recovery of punitive damages. Fahrenberg v. Tengel (1980), 96 Wis.2d 211, 291 N.W.2d 516; Graham, v. Turner (Tex.Civ.App.1971), 472 S.W.2d 831, 839; Graham v. Clarks Fork National Bank (Mont. 1981), 631 P.2d 718, 721, 38 St.Rep. 1140, 1143-44; Luther v. Lee (1922), 62 Mont. 174, 179, 204 P. 365, 367. For example, exceeding the 55 m.p.h. speed limit is unlawful and may even be intended, but does not rise to the level of culpability warranting punitive damages unless there is a high degree of probability that serious harm will result.
Section 27-1-221, MCA provides for punitive awards in cases of “actual” malice and “presumed” malice. Thus, where a statute specifically proscribes conduct which is actually malicious such as theft or assault, punitive damages may be sought for violation of such a statute. Violation of other statutes warrants an issue of punitive damages only where malice may be presumed from the particular facts.
Consideration of recent decisions of this Court will demonstrate when malice may be presumed from violation of statute.
In First Security Bank v. Goddard (1979), 181 Mont. 407, *450 422, 593 P.2d 1040, 1048-1049, we held that malice could be implied, where the defendant insurance company breached its duty to settle as soon as possible with its insured in violation of the insurance code, because the defendant engaged in a course of conduct “knowing it to be harmful and unlawful,” and its actions were “unjustifiable.” Acc. Ramsbacher v. Hohman (1927), 80 Mont. 480, 487-488, 261 P. 273, 276. Again in Dvorak v. Huntley Project Irrig. Dist. (1981), 196 Mont. 167, 639 P.2d 62, an intentional failure to provide water to the rightful claimant in violation of statute was held to support an award of punitive damages because the conduct of the defendant was “unjustifiable”.
Another discussion of the concept of malice-in-law is found in Butcher v. Petranek (1979), 181 Mont. 358, 593 P.2d 743. In that case we approved a “recklessness” standard for presumed malice.
“The jury may also take into account whether the acts complained of are ‘of such a character as to indicate a reckless disregard of the rights of the plaintiff in awarding a ‘reasonable amount’ of punitive damages. Mosback v. Smith Brothers Sheep Co. (1922), 65 Mont. 42, 46-47, 210 P. 910, 912.
“Elaborating further on the concept of malice, we stated in 1927 that:
“ . . . ‘The term “malice,” as applied to torts, does not necessarily mean that which must proceed from a spiteful, malignant or revengeful disposition but a conduct injurious to another, though proceeding from an ill-regulated mind, not sufficiently cautious before it occasions an injury to another. . . . ‘ “ Ramsbacher v. Hohman Owens (1927), 80 Mont. 480, 487-88, 261 P. 273, 276. Id. at 362, 593 P.2d 743.
This recklessness standard is the same punitive damages standard used by this Court in evaluating conduct of defendants which was not specifically proscribed by statute. See e.g. Graham v. Clarks Fork National Bank (Mont. 1981), 631 P.2d 718, 721, 38 St.Rep. 1140, 1144, “recklessness”; Shahrokhfar v. State Farm (Mont. 1981), 634 P.2d *451 653, 657, 38 St.Rep. 1669,1673, “recklessly”; Derenberger v. Lutey (Mont. 1983), [207 Mont. 1,] 674 P.2d 485, 40 St.Rep. 902, 907, “willful or wanton misconduct”; Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 132, 580 P.2d 915, 921, “willful disregard of duty”; and Cashin v. Northern Pac. Ry. Co. (1934), 96 Mont. 92, 112, 28 P.2d 862, 870, “willful or wanton disregard of the rights of others.”
The use of words like “unjustifiable” and “reckless” represent attempts of this Court to describe that level of conduct, whether specifically proscribed by statute or not, which is so culpable as to warrant an award of punitive damages.
Much confusion has been generated by inconsistent use of loosely defined terms such as willfulness, wantonness, recklessness, gross negligence, and unjustifiable conduct. To avoid future confusion it is necessary to adopt a carefully defined standard of conduct and prescribe its legal significance. We adopt this standard for presumed malice:
When a person knows or has reason to know of facts which create a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk, or recklessly proceeds in unreasonable disregard of or indifference to that risk, his conduct meets the standard of willful, wanton, and/or reckless to which the law of this State will allow imposition of punitive damages on the basis of presumed malice.
This standard is more definitive and perhaps more stringent than those of the past. Certainly the “unjustified conduct” measure was extremely broad and difficult to apply. We also emphasize that substantial interests must be implicated so that an intentional or reckless disregard of duties that do not protect substantial interests, does not give rise to punitive damages. The standard, in substance, is supported by Restatement of the Law, Torts 2d. ] 500, comment a.
The standard is equally applicable to statutory vio *452 lations and other wrongful conduct. Thus, where a statute is designed to protect the substantial interests of a person from a high degree of risk, and the statute is violated either intentionally or recklessly, a jury question of punitive damages is raised. Punitive damages may also be awarded under Sections 27-1-221, MCA for fraud or oppression. This holding only defines a standard for “presumed malice.”
The present case involves a determination of whether the statute, Section 49-4-101, MCA was designed to protect the substantial rights of employees such as Owens from a high risk of harm, and whether Parker’s alleged violation of the statute was reckless.
The Discrimination in Employment Statutes, Sections 49-4-101, 102, MCA, are enacted to protect the handicapped person’s substantial right to be fairly treated in the employment relationship.
Section 49-4-101, MCA, provides as follows:
“Discrimination prohibited. It is unlawful to discriminate, in hiring or employment, against a person because of the physical handicap of such person. There is no discrimination where the nature or extent of the handicap reasonably precludes the performance of the particular employment or where the particular employment may subject the handicapped or his fellow employees to physical harm.”
Section 49-4-102, MCA, provides as follows:
“Penalty and civil remedy. A person who practices discrimination in violation of 49-4-101 commits a misdemeanor and is also liable in a district court action for civil damages and attorney’s fees by the person discriminated against. Should the person who allegedly practiced discrimination prevail in the civil action, he shall be entitled to recover reasonable attorney’s fees from the person who alleged the discrimination.”
These statutes were specifically designed to protect handicapped persons from the denial of a substantial right to fair treatment in the employment relationship; such denial would result in economic harm to such persons and *453 their families, as well as damage to their sense of self esteem. Violation of this statute warrants a claim for punitive damages if such violation is shown to be intentional or reckless. Therefore, the final issue is whether sufficient evidence has been produced by way of depositions and interrogatories to establish a genuine issue of reckless conduct creating a presumption of malice which would support a claim for punitive damages.The following facts have been established prima facie by Owens:
1. Owens has been missing the forearm on his right side since he was 6 years old.
2. Owens has been able to fully and safely perform all of his duties while working on drilling rigs.
3. Owens was fired by Roger Hystad on the sole basis that since he only had one arm it would not be safe to keep him on and that it was company policy to therefore fire him.
4. No investigation was made into the ability of Owens to safely and fully complete the duties of his employment.
5. No specific facts supported the conclusion that Owens would be unsafe.
6. A written company policy prohibited hiring of workers in Owens’ condition; although it was also company policy to give handicapped persons “every consideration.”
The above facts, if proven, would support a finding that the defendant recklessly proceeded in unreasonable disregard of, and in great risk to, the substantial interests of plaintiff. Failure to give a person a chance in employment is the essence of the wrong proscribed by Section 49-4-101, MCA. Failure to even investigate plaintiffs worth could be found by the jury to be recklessness.
We add that there may be a punitive damage issue on oppression. In Gary & Purcell v. Automatic Gas et al, No. 82-54 (Mont. Dec. 1983), [207 Mont. 223] 673 P.2d 1246, 40 St.Rep. 1997, we defined oppression to include acts which constitute an abuse of power. A determination of whether acts of oppression may be involved should await presentation of the evidence.
*454 There are those who distrust the lay person’s capacity for reasoned and dispassionate judgment. There are those who tolerate the juries but feel compelled to hold tight rein lest the wretched twelve break the bank. This judicial chauvinism will, if not checked, inevitably erode the jury process.
We feel that the parties’ peers are best able to define and measure justice. In any factual setting, where reasonable minds can disagree, we will vigilantly protect the peoples’ jural function.
The District Court is reversed and the matter is remanded for trial.
MR. CHIEF JUSTICE HASWELL, and MR. JUSTICES SHEA, HARRISON AND SHEEHY.