No. 87-293

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

PATRICIA L. COOPER,

       Plaintiff and Appellant,

-vs-

KARL F. ROSSTON,

       Defendant and Respondent.

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lynaugh, Fitzgerald & Hingle; Michael G. Eiselein,
Billings, Montana

    For Respondent:

        Poore, Roth & Robinson; C. Richard Anderson, Butte,
Montana

Submitted: April 5, 1988

Decided: May 31, 1988

Filed: MAY 3 1 1988

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Patricia L. Cooper (Cooper) appeals a Second Judicial District Court, Silver Bow County, jury verdict award of damages for injuries she sustained in a pedestrian/automobile accident in Butte, Montana. We reverse and remand for a new trial.

This case involves an accident that occurred on Saturday, November 19, 1983, in the parking lot of the War Bonnett Inn, a motel in Butte, Montana. At approximately 11:00 p.m. that evening, a 1974 one-ton Chevrolet four-door pickup truck ran over Cooper. The driver of the pickup truck was Karl F. Rosston (Rosston) who was sixteen years old at the time.

Earlier that evening, Rosston picked-up six juvenile acquaintances to attend a game at a state girls basketball tournament in Butte. Prior to attending the game, the seven boys purchased three six packs of beer at a local grocery store. The boys drank some of the beer with food at around 7:00 p.m. and then went to a basketball game at the Butte Civic Center. They left the Civic Center at around 10:00 p.m. and drove around for about an hour.

At approximately 11:00 p.m., Rosston drove his father's pickup truck onto the entry ramp of the War Bonnett Inn. Twenty-seven year old Patricia Cooper and some of her girl friends were leaving the War Bonnett Inn at the time Rosston and the other boys arrived. Cooper and her friends were also in Butte to attend the basketball games. Prior to leaving the War Bonnett Inn, Cooper and her friends had been drinking alcoholic beverages in the motel lounge.

As the women exited the motel, Rosston's passengers exited the pickup truck and began to tease Cooper and her

friends. Rosston did not participate in the teasing but stood next to his pickup truck and watched for the three or four minutes of the conversation. One of Rosston's passengers, Chris Albrecht, attempted to take a beer cooler from the back of Cooper's pickup truck. One of the women demanded that Albrecht return the cooler and he complied with the demand. The boys then left the immediate vicinity in Rosston's pickup truck.

Instead of exiting the parking lot, Rosston circled around and parked within thirty or forty feet of the women. Some of the boys testified at trial that they went back specifically to attempt to take the beer cooler. Rosston's passengers once again exited his vehicle and one of the boys took Cooper's beer cooler. Rosston remained standing at the door of his vehicle until the boys started running back to the truck with the beer cooler. Rosston got into his vehicle and began to drive away with the back doors open as his acquaintances jumped in with the cooler. Meanwhile, Cooper and her friends chased down Rosston's vehicle and one woman, Kellie Reed, grabbed on to the driver's side mirror. Rosston felt a bump and thought that he had run over a speed bump. Kellie Reed then yelled that Rosston had run over Cooper. Cooper had attempted to jump on to Rosston's moving vehicle and had fallen underneath the rear tires. Rosston stopped his vehicle, got out, and ran back to find Cooper on the ground with extensive injuries.

The authorities were called and Cooper was taken to the hospital. By the time the police arrived, Rosston's passengers had all left the scene. When questioned by the police as to what happened, Cooper's friends failed to identify Rosston as the driver of the pickup truck. In a verbal statement at the scene, and an hour later in a written statement, Rosston told the police that one of the other boys

3

drove the pickup truck at the time Cooper was injured. Rosston also failed to immediately identify two of the boys involved in the incident and did not inform the authorities that he had consumed some alcohol earlier in the evening. Later that evening, Rosston's acquaintances contacted the police about their involvement in the accident. Approximately ninety minutes after his first statement, Rosston changed his story and informed the police that he was the driver of the vehicle that ran over Cooper. Rosston has not since denied his involvement.

On January 9, 1984, Cooper filed a complaint and demand for jury trial with allegations of negligent, willful and reckless conduct. Cooper asked for general and punitive damages. Prior to trial, Rosston sought by a motion in limine to exclude any evidence pertaining to Rosston's original story that someone else drove the pickup truck, his failure to identify all of the boys involved at the time of the accident, and his failure to inform authorities that he had consumed alcoholic beverages that evening. The District Court granted the motion and excluded the evidence. During trial the District Court also struck Cooper's claim for punitive damages on the grounds that there was no evidence of willful or reckless misconduct.

The jury found both Rosston and Cooper fifty percent negligent and found Cooper's total damages to be $30,000. Cooper's total recovery after the reduction for her percentage of the negligence was $15,000 plus $775.95 in costs. Notably, Cooper's actual medical expenses and lost wages totaled just under $15,000. Plaintiff Cooper appeals from the judgment and we identify the following four issues:

1. Did the District Court err in prohibiting the introduction of evidence regarding Rosston's

4

misrepresentations and omissions made to law enforcement officials immediately after the accident?

2. Did the District Court err in instructing the jury that a juvenile is held to a lesser standard of care than an adult under the circumstances of this case?

3. Did the District Court err in refusing to instruct the jury as to the elements of theft, reckless driving, and willful and wanton misconduct?

4. Did the District Court err in striking Cooper's claim for punitive damages?

In her first issue, Cooper claims that the District Court should have allowed the introduction of evidence regarding Rosston's misdeeds immediately after the accident. We begin our analysis of evidentiary rulings with the recognition that issues concerning the admissibility of evidence are within the discretion of the district court. Moen v. Peter Kiewit & Sons' Co. (1982), 201 Mont. 425, 439, 655 P.2d 482, 489. A district court's ruling on the admissibility of certain evidence will not be disturbed absent a showing of an abuse of that discretion. Britton v. Farmers Ins. Group (Mont. 1986), 721 P.2d 303, 315, 43 St.Rep. 641, 654. In its order of June 15, 1987, the District Court granted Rosston's motion in limine to exclude evidence of the following:

> 1. Statements made by Karl Rosston immediately following the accident, wherein he denied being the driver of the vehicle involved in this accident;
>
> 2. Inconsistencies in the statements given by Karl Rosston following this accident to investigating officers, wherein he did not identify certain boys who where at or near the scene of the accident;

5

3. Any and all other inconsistencies in the statements provided by Karl Rosston subsequent to this accident, including but not limited to, whether he had consumed alcoholic beverages; . . .

The above misrepresentations and omissions, Cooper contends, were relevant to impeach Rosston's credibility at trial and were relevant on the issue of punitive damages. Rosston counters by arguing that this evidence constitutes impeachment on collateral matters and that the prejudicial effect of the evidence outweighs any probative value.

At trial, Rosston identified the other juveniles in his pickup truck, admitted that he was the driver of the vehicle that ran over Cooper, and admitted that he had been drinking prior to the accident. Rosston contends that, because these facts were not at issue in the trial, the excluded evidence constitutes impeachment on collateral matters. We agree that the evidence in question was collateral to all issues in this case except two -- the issue of Rosston's credibility as a witness and the issue of punitive damages as will be discussed later in this opinion.

Section 26-1-302, MCA, provides as follows:

A witness is presumed to speak the truth. The jury or the court in absence of the jury is the exclusive judge of his credibility. This presumption may be controverted and overcome by any matter that has a tendency to disprove the truthfulness of a witness' testimony; such matters include but are not limited to:

. . .

(7) inconsistent statements of the witness;

(8) an admission of untruthfulness by the witness;

6

> (9) other evidence contradicting the
> witness' testimony.

Rule 401 of the Montana Rules of Evidence provides that "[r]elevant evidence may include evidence bearing upon the credibility of a witness or hearsay declarant." Credibility evidence, though relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . " Rule 403 M.R.Evid. Evidence of Rosston's misrepresentations and omissions is relevant to the issue of his credibility as a witness and we are not convinced that the admission of this evidence prejudices Rosston to the point of outweighing its probative value. The jury is the exclusive judge of Rosston's credibility and the District Court erred in excluding evidence bearing on that credibility. Section 26-1-302, MCA.

We also note that the "collateral matters" rule, as argued by Rosston, was abolished in favor of the above relevancy approach upon the adoption of Rule 607, M.R.Evid., in 1977. The Commission Comments on Rule 607 contain the following language pertinent to this issue:

> [T]he Commission intends the broad language of Rule 607, allowing the reliability of a witness to be attacked, to mean that impeachment is only limited by the ingenuity of counsel to show any reason to disbelieve a witness' testimony and by consideration of relevancy under Rules 401 and 403.
>
> . . .
>
> The limitation of impeachment by considerations of relevancy is a change in Montana law to the extent that it abolishes the collateral matters rule.
>
> . . .

7

> The many cases considering collateral
> matters indicate that it is a troublesome
> doctrine. The Commission believes that
> the limitation of impeachment by Rule
> 401, defining relevant evidence as
> including impeaching evidence, and Rule
> 403, allowing the court to exclude
> relevant evidence if its probative value
> is outweighed by prejudice, confusion,
> waste of time, will allow the same result
> to be reached through a more flexible
> means than currently used with the
> collateral matters rule. Therefore,
> Section 93-401-25, R.C.M. 1947
> [superseded], (to the extent that it is
> concerned with collateral matters) and
> case law stating the collateral matters
> rule are abolished in favor of the
> relevancy approach.

Commission Comments, Rule 607, M.R.Evid. We recognize the existence of post-1977 cases which refer to the collateral matters rule. See e.g., Moen, 655 P.2d at 488; State v. Harvey (1979), 184 Mont. 423, 432, 603 P.2d 661, 666. However, this Court favors the relevancy analysis under Rules 401 and 403, M.R.Evid.

The evidence proffered by Cooper is also relevant on the issue of punitive damages in this case. It was not until several hours after the accident that Rosston admitted that he was the driver of the vehicle that ran over Cooper, that he had been drinking that evening, and that he knew the identities of the other juvenile boys. Cooper contends that Rosston's misrepresentations and omissions as to his actions that night deprived the investigating officers of reason to test Rosston's blood alcohol content. This deliberate attempt to mislead law enforcement officials, Cooper argues, is evidence of Rosston's willful and wanton conduct. We agree.

8

In Lauman v. Lee (Mont. 1981), 626 P.2d 830, 38 St.Rep. 499, this Court determined that evidence of a deliberate destruction of physical evidence can provide the basis for actual or punitive damages. The defendant in Lauman, Larry Lee, wiped mud from the headlights of an automobile involved in an accident. The investigating officer testified at trial that the physical evidence concerning the illuminating characteristics of the headlights at the time of the accident was crucial to the determination of fault. Lauman, 626 P.2d at 833. The lack of evidence concerning the headlights decreased the settlement potential of Lauman's case or the probability of a plaintiff's verdict. Lauman, 626 P.2d at 833. The jury awarded Lauman $17,500 in punitive damages and Lee appealed.

On appeal, Lee argued that the award of punitive damages was excessive. According to Lee, his conduct in wiping the headlights was innocuous and an award of punitive damages was, therefore, the result of the inflamed passion and prejudice of the jury. Lauman, 626 P.2d at 834. This Court declined to disturb the jury's award of punitive damages and stated the following:

> We have recently discussed the jury's prerogative in setting exemplary damages . . . The jury may consider such attendant circumstances as the malice or wantonness of the act, the injury intended, the motive for the act, the manner of the commission and the deterrent effect on others, as well as the defendant's wealth . . . The jury had discretion reasonably to calculate a suitable punishment for Lee's actions after listening to the testimony and weighing the evidence. [Citations omitted.]

Lauman, 626 P.2d at 834.

9

Sections 27-1-220 and 27-1-221, MCA, authorize an award of punitive damages "where the defendant has been guilty of either actual or implied malice." Lauman, 626 P.2d at 832. "Liability for punitive damages must be determined by the trier of fact, whether judge or jury." Section 27-1-221(6), MCA. Rosston admits that he lied to law enforcement authorities concerning his involvement in the accident. In her offer of proof, Cooper contends that the investigating officers would have administered a blood alcohol test if they had known that Rosston was the driver of the vehicle that injured Cooper. As in Lauman, we are unable to determine the precise extent of Cooper's damages that might be attributable to Rosston's obstruction of the accident investigation. Whether Rosston's misrepresentations and omissions give rise to an award of punitive damages in this case was a question of fact for the jury to determine. Section 26-1-202, MCA. The excluded evidence was, therefore, relevant to the issue of punitive damages. Rule 401, M.R.Evid. Accordingly, we hold that the District Court erred in excluding evidence of Rosston's misrepresentations and omissions to law enforcement officials.

In her second issue, Cooper contends that the District Court erred in giving the following instruction:

> A child is not held to the same standard of care as an adult. A child is negligent if he fails to use that degree of care which is ordinarily exercised by children of the same age, intelligence, knowledge and experience under the circumstances then existing.

A sixteen year old (Rosston) with a valid Montana driver's license is held to the same standard of care while driving an automobile as an adult in the same circumstances. Wollaston v. Burlington Northern, Inc. (1980), 188 Mont. 192, 612 P.2d

1277. The issues in this case centered around Rosston's actions in driving a vehicle. The instruction in question impermissibly allowed the jury to hold Rosston to a lesser standard of care than an adult while driving a vehicle. We hold that the District Court erred in giving the above instruction in this case.

Cooper argues in her third issue that the District Court erred in refusing to submit Cooper's proposed instructions with regard to the elements of theft, reckless driving, malice, and willful misconduct. She contends that the evidence and testimony create a question of fact as to whether Rosston had committed acts amounting to malice or willful and wanton conduct. We agree.

"[W]here a statute specifically proscribes conduct which is actually malicious such as theft . . . punitive damages may be sought for violation of such a statute." Owens v. Parker Drilling Co. (1984), 207 Mont. 446, 449, 676 P.2d 162, 163-164. This Court adopted the following standard in Owens regarding presumed malice:

> When a person knows or has reason to know facts which create a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk, or recklessly proceeds in unreasonable disregard of or indifference to that risk, his conduct meets the standard of willful, wanton, and/or reckless to which the law of this State will allow imposition of punitive damages on the basis of presumed malice.

Owens, 676 P.2d at 164. The Court went on to conclude that, "[w]here a statute is designed to protect the substantial interests of a person from a high degree of risk, and the statute is violated either intentionally or recklessly, a

jury question of punitive damages is raised." Owens, 676 P.2d at 165.

The evidence in this case gave rise to questions of fact regarding Rosston's participation in the theft of the beer cooler, his operation of a motor vehicle in a reckless manner, and his misrepresentations and omissions to law enforcement officials as previously discussed. The District Court determined that the evidence did not support instructions on theft, reckless driving, malice, and willful and wanton misconduct. We have reviewed the same evidence and conclude that reasonable minds could differ as to whether Rosston's actions constituted malicious, willful, wanton, or reckless conduct for which punitive damages may be awarded. Mallory v. Cloud (1975), 167 Mont. 115, 118, 535 P.2d 1270, 1272. The testimony presented the District Court with a triable issue of fact regarding these matters relating to Cooper's case and failure to instruct the jury on these elements constitutes reversible error. Tacke v. Vermeer Mfg. Co. (Mont. 1986), 713 P.2d 527, 534, 43 St.Rep. 123, 131.

We note that Cooper argues that her recovery would not have been reduced had Rosston been found guilty of willful and wanton misconduct. Cooper cites to Derenberger v. Lutey (1983), 207 Mont. 1, 674 P.2d 485, to argue that simple negligence cannot be compared with willful misconduct. However, this Court recently overruled Derenberger in Martel v. Montana Power Co. (Mont. 1988), 752 P.2d 140, 45 St.Rep. 460. Negligence in all forms can now be compared under Montana's comparative negligence statute, § 27-1-702, MCA. Martel, 752 P.2d at 143, (citing Bielski v. Schulze (Wis. 1962), 114 N.W.2d 111-114).

In light of the foregoing discussion, we must also conclude that the District Court erred in striking Cooper's claim for punitive damages during trial. First Nat. Bank of

Libby v. Twombly (Mont. 1984), 689 P.2d 1226, 1229, 41 St.Rep. 1948, 1953. The evidence in this case presented the jury with numerous questions of malicious, willful, wanton or reckless conduct which may have warranted an award of punitive damages. As the trier of fact, the jury was entitled to hear argument and jury instructions with respect to punitive damages.

Reversed and remanded for a new trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Honorable Frank I. Haswell,
retired Chief Justice, sitting
for Mr. Justice Fred J. Weber